UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID SANCHEZ DIAZ,

    *Plaintiff*,

v.

CODDI-WES I, LLC, *et al.*,

    *Defendants.*

No. 19-cv-3531 (DLF)

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Sanchez Diaz received an hourly wage for his work as a food runner at a restaurant called Rebellion. *See* Pl.'s Statement of Undisputed Facts ¶¶ 197, 200, Dkt. 52-2.[1] He also received a flat salary for the janitorial work he performed at both Rebellion and an affiliated restaurant, Rebellion on the Pike. *See id.* ¶ 204. In this action, he alleges that his employers failed to pay him overtime wages as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Revision Act (DCMWA), D.C. Code § 32–1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law (DCWPCL), D.C. Code § 32–1300 *et seq. See* Am. Compl. ¶¶ 61–80. He alleges that his employers include Defendants Coddi-Wes I, LLC, PHMC-AVA, LLC, Brian Westlye, Travis Weiss, and James Hohman II.[2] *See id.* ¶¶ 6–9, 11, 62.

---

[1] The Court cites to the parties' Statements of Facts if a fact is undisputed. If a fact is disputed, the Court will indicate as such.

[2] Although Diaz once identified Leonard Codispot III as an additional employer, *see* Am. Compl. ¶ 10, he has since dropped that allegation, *see* Stipulation of Dismissal, Dkt. 49.

Before the Court are three motions for summary judgment, which each concern whether Diaz had an employment relationship with the defendants. *See* Dkt. 45, 47, 52. First, the defendants jointly move for summary judgment on the ground that Diaz cleaned their restaurants as an independent contractor, rather than as an employee. *See* Defs.' Mot. for Summ. J. at 3–12, Dkt. 47-1. Second, Hohman separately moves for summary judgment on the ground that he does not qualify as an employer. *See* Hohman Mot. to Dismiss, Dkt. 45. Finally, Diaz moves for summary judgment on two grounds: first, that the FLSA applies to the corporate defendants and, second, that Coddi-Wes, Westlye, and Weiss qualify as his employers for the purpose of liability under that statute. *See* Pl.'s Partial Mot. for Summ. J., Dkt. 52. For the following reasons, the Court will deny the defendants' joint motion, grant Hohman's separate motion, and grant Diaz's motion with respect to all defendants except Weiss.

I. BACKGROUND

A. Statutory Background

The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation" for his additional hours "at a rate not less than one and one-half times [his] regular rate." 29 U.S.C. § 207(a)(1). For this purpose, an employee's regular rate includes their "remuneration for employment," excluding gifts, vacation and sick pay, various insurance payments, and certain other exempted items. *Id.* § 207(e). The FLSA also grants aggrieved employees a private right of action, with the opportunity to recover both their "unpaid overtime compensation" and an additional amount of liquidated damages. *Id.* § 216(b).

District of Columbia law similarly entitles employees to overtime pay, *see* D.C. Code § 32-1003(c), and creates a private right of action, *see id.* §§ 32-1012(a), 32-1308. This Court

has previously held that, "[b]ecause the DCWPCL and FLSA contain nearly identical provisions with respect to employers' liability," the determination of whether an individual is an employer or an employee for the purpose of the FLSA also applies for the purpose of D.C. law.  *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 n.2 (D.D.C. 2010); s*ee also Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009).  Accordingly, the differences between the above statutes are not material to the instant motions.

>   B.    **Factual Background**

Diaz began working at Rebellion in 2016.  *See* Pl.'s Statement of Facts ¶ 213.  At that time, his duties included "bringing food from the kitchen to seated customers, cleaning tables, interacting with guests, [and] communicating with front-of-the-house staff." *Id.* ¶ 221.  Diaz worked in that role for approximately twenty to thirty hours each week and received an hourly wage that gradually rose to $11.50.  *See id.* ¶¶ 200–01, 212–16; Pl.'s Dep. at 12:22–13:7, Dkt. 55-1.  It is undisputed that Diaz worked those hours as an employee of the restaurant, as that term is used in the FLSA.  *See* Defs.' Reply at 6–7, Dkt. 76.

In 2017, Diaz began to clean Rebellion after hours for the flat salary of $500 per week.  *See* Pl.'s Statement of Facts ¶¶ 204, 217.  In the spring of 2019, Diaz began to clean Rebellion on the Pike as well, for the flat salary of $500 every two weeks.  *See id.* ¶ 204; Pl.'s Dep. at 33:3–10.  The defendants argue that, although Diaz worked as an employee during his food running shifts, he worked as an independent contractor during his janitorial duties.  *See* Defs.' Mot. for Summ. J. at 1.  Diaz was fired from his food running and janitorial roles at both restaurants on November 3, 2019.  *See* Pl.'s Statement of Facts ¶ 217.

Diaz filed the instant action on November 22, 2019.  *See* Compl., Dkt. 1.  Following discovery, Diaz moved to amend his complaint, *see* Dkt. 17, and this Court granted his motion,

*see* Minute Order of June 4, 2020.  The Court then referred the case to mediation, *see* Minute Order of Oct. 22, 2020, which proved unsuccessful, *see* Joint Status Report of Feb. 18, 2021, Dkt. 43.  The defendants filed their motions for summary judgment on April 15, 2021, *see* Dkts. 45, 47, and Diaz filed his motion for partial summary judgment on May 21, 2021, *see* Dkt. 52.  Those motions are now ripe for review.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one that could affect the outcome of the lawsuit.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims."  *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.   ANALYSIS

#### A.   The Defendants Have Not Shown That Diaz Was an Independent Contractor

Courts assess employment status—whether a worker is an employee or an independent contractor—with an eye to "[e]conomic reality rather than technical concepts." *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (internal quotation marks omitted).  In doing so, the D.C. Circuit has previously weighed "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) (citation omitted).  The Circuit has also assessed "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business." *Id.* (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988)).  None of those factors "standing alone is dispositive," *id.*, and the weighing of the factors is a question of law, *see id.* at 10 n.3 (citation omitted).

Here, several of the above factors favor classifying Diaz as an employee.  His cleaning responsibilities did not require special skills.  *See* Pl.'s Statement of Facts ¶ 238.  He performed those duties on a consistent basis for several years.  *See id.* ¶¶ 210, 217.  The defendants provided both cleaning materials for him to use, *see id.* ¶ 234, and specific directions on how to perform his work, *see id.* ¶¶ 239–43.  Although the defendants set no fixed schedule for when

5

Diaz was required to clean their restaurants, *see* Defs.' Statement of Facts ¶ 1,[3] they directed him to clean only when their restaurants were closed, *see* Pl.'s Statement of Facts ¶¶ 91, 169, 208, and sometimes assigned him additional tasks, such as cleaning ceiling fans or light fixtures, *see id.* ¶ 237.  Finally, the defendants did not prepare a written contract for Diaz's janitorial duties. *See id.* ¶ 226.  These considerations strongly suggest an employer-employee relationship.

Moreover, although the defendants now attempt to bifurcate Diaz's food running and janitorial duties, *see* Defs.' Mot. for Summ. J. at 1, they previously treated those duties as a part of a single employment relationship.  Before Diaz took over Rebellion's janitorial work, the work was performed by other individuals who qualified as employees.  *See* Pl.'s Statement of Facts ¶ 224.  On at least one occasion, the defendants paid Diaz a single check for both "tips [earned as a food runner] and cleaning."  *See id.* ¶ 206 (quoting Hohman Dep. at 55:7–14, Dkt. 53-1)).  Diaz was fired from both his food running and janitorial roles simultaneously.  *See id.* ¶¶ 218, 260–61.  Before he was fired, the defendants told him that his performance in both roles was inadequate.  *See id.* ¶ 261; Coddi-Wes Dep. at 61:4–13, Dkt. 61-1.  And after he was fired, his janitorial work reverted to other employees of the restaurants.  *See id.* ¶¶ 225, 250.  Indeed, at no point during the period relevant to this litigation did the defendants contract with any other person to provide services on a weekly basis.  *See id.* ¶ 231.  Those considerations foreclose the defendants' bifurcation theory.

The defendants finally argue that Diaz was an independent contractor because he hired his own employees.  It is undisputed that Diaz sometimes hired both his wife and a woman named Griselda to clean the defendants' restaurants; that Diaz paid those women out of his own

---

[3] The defendants did not number the paragraphs in their statement of undisputed material facts. For convenience, the Court uses the numbering adopted in the plaintiff's response to that statement.  *See* Dkt. 52-1.

pocket; and that he supervised both women's work. *See* Defs.' Statement of Facts ¶¶ 2–3, 5–6. But although those facts show that Diaz had an "opportunity for profit or loss" in his janitorial work, that showing is not dispositive here, where the "totality of the circumstances" suggest he was an employee. *See Morrison*, 253 F.3d at 11. Nor does *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947), support the defendants' position. *See* Defs.' Mot. for Summ. J. at 11–12. That case made a commonplace observation: that there are "independent contractors who take part in production or distribution who [are] responsible for the wages and hours of their own employees." *Id.* at 729 (citing *United States v. Silk*, 331 U.S. 704 (1947)). That language does not create any rule of law—let alone hold that hiring employees necessarily makes someone an independent contractor. *But see* Defs.' Mot. for Summ. J. at 11–12; Defs.' Reply at 4–5.

For the reasons above, Diaz cleaned the defendants' restaurants as an employee, rather than an independent contractor. And although Diaz did not specifically move for summary judgment on the ground that he worked as an employee, no genuine dispute of material fact prevents the Court from resolving this issue. The parties dispute how often Diaz hired others to help him clean the restaurants, *compare* Defs.' Statement of Facts ¶ 4 (citing Pl.'s Dep. at 25:14–15), *with* Pl.'s Response to Defs.' Statement of Facts ¶ 4, Dkt. 52-1 (citing Pl.'s Dep. at 25:4–6), and whether the defendants limited his choice of employees, *compare* Defs.' Statement of Facts ¶ 7 (citing Pl.'s Dep. at 79:13–16), *with* Pl.'s Statement of Facts ¶ 7 (citing Pl.'s Dep. 25:16–19, 76:1–8). But even if the Court accepted the defendants' positions on both issues—*i.e.*, that Diaz hired help semi-regularly and chose his own employees, *see* Defs.' Statement of Facts ¶¶ 4, 7— he would still qualify as an employee for all the reasons stated above. In short, Diaz's opportunity for profit or loss does not outweigh all the other factors that cast him as an employee. The FLSA accordingly classifies him as an employee rather than an independent

contractor.  *See Morrison*, 253 F.3d at 10 n.3 (holding that the weighing of the *Morrison* factors is a question of law).

      **B.**      **The Corporate Defendants Are Covered Enterprises**

Defendants Coddi-Wes and PHMC-AVA—which operated Rebellion and Rebellion on the Pike respectively, *see* Pl.'s Statement of Facts ¶¶ 1, 4, 6—are subject to the FLSA's overtime provisions.  As relevant here, those provisions apply to employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).  An "enterprise" meets that description if its "annual gross volume of sales made or business done is not less than $500,000" and if it has "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for [interstate] commerce."  *Id.* § 203(s)(1); *see also id.* § 203(b) (defining "commerce" in the FLSA to exclude commerce within a single state).  Coddi-Wes' monthly gross income exceeded $100,000, and PHMC-AVA's annual gross income in 2019 was approximately $790,000.  *See* Pl.'s Statement of Facts ¶¶ 1, 4.  Those figures put the entities' "annual gross volume of sales" above the FLSA's floor.  *See* 29 U.S.C. § 203(s)(1).  Moreover, it is undisputed that employees at both Rebellion and Rebellion on the Pike handled food and alcohol items that had been grown, raised, or produced outside of their respective states.  *See* Pl.'s Statement of Facts ¶¶ 2–3, 5.  Coddi-Wes and PHMC-AVA thus qualify as "enterprise[s] engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 203(s)(1).  Accordingly, if one or both of those companies "employed" Diaz, they are subject to the overtime provisions in the FLSA.  *Id.* § 207(a)(1).

      **C.**      **Several Defendants Qualify as Diaz's Employers**

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d).  In applying that definition,

courts ask whether the alleged employer had "the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records." *Villar*, 664 F. Supp. 2d at 96 (citing *Morrison*, 253 F.3d at 11). "This test may show that more than one 'employer' is liable for violations of the FLSA." *Ventura*, 738 F. Supp. 2d at 5. It also admits the possibility that "a corporate officer with operational control of a corporation's covered enterprise [may be] an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 143–44 (D.D.C. 2016) (quoting *Ruffin v. New Destination*, 800 F. Supp. 2d 262, 269 (D.D.C. 2011)). "To determine whether a corporate officer has operational control, the Court looks at the factors above plus the ownership interest of the corporate officer." *Ventura*, 738 F. Supp. 2d at 5–6. For the following reasons, the Court will hold that Coddi-Wes and Brian Westlye were Diaz's employers and that James Hohman was not. The Court will also deny summary judgment with respect to Travis Weiss.[4]

### 1.  *Coddi-Wes*

Diaz worked as a food runner at Coddi-Wes from August 2016 to November 2019. *See* Pl.'s Statement of Facts ¶¶ 7–8. During that time, Coddi-Wes required Diaz to clock in and out of its restaurant, *see id.* ¶ 9; directed him to prepare both a W-4 and an I-9, *see id.* ¶ 10; paid him an hourly wage, *see id.* ¶ 11; and paid employer-side payroll taxes, *see id.* ¶ 12. The defendants concede that Coddi-Wes employed Diaz during his food running shifts, *see* Defs.' Reply at 6–7, although they deny that Coddi-West was Diaz's employer for the purpose of his janitorial work,

---

[4] Neither party moved for summary judgment with respect to PHMC-AVA, so the Court will not address its status here.

9

*see id.* at 7.  But the Court already rejected that argument, *see supra*, and thus Coddi-Wes was Diaz's employer.

        2.      Brian Westlye

Westlye also was Diaz's employer.  Westlye is an owner and corporate officer of Coddi-Wes, which operated Rebellion.  *See* Pl.'s Statement of Facts ¶¶ 6, 15–17.  There is also evidence that he had "operational control" of the restaurant, as is necessary for joint and several liability.  *Perez*, 221 F. Supp. 3d at 143–44.  For example, Westlye personally hired general managers for the restaurant, *see* Pl.'s Statement of Facts ¶ 55; participated in the decision to hire Diaz to clean the restaurant, *see id.* ¶ 33; signed employees' paychecks, *see id.* ¶ 21; required general managers to seek approval from him or Weiss before giving certain raises, *see id.* ¶ 29; counseled Diaz on his poor performance, *see id.* ¶ 73; supervised other employees, including through setting generally applicable policies, *see id.* ¶¶ 74–75; and participated in the decision to fire Diaz, *see id.* ¶¶ 50, 52.  Moreover, Westlye forfeited any challenge to his status as an employer.  "It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (citing *FDIC v. Bender*, 127 F.3d 58, 67 (D.C.Cir.1997)).  Because Westlye never responded to Diaz's argument that he qualified as an employer, *see generally* Defs.' Reply, that principle applies here.  Westlye thus was Diaz's employer within the meaning of the FLSA.

        3.      James Hohman II

Hohman, in contrast, does not qualify as Diaz's employer.  To begin, there is no evidence that Hohman was a "corporate officer" of either Coddi-Wes or PHMC-AVA, *Perez*, 221 F. Supp. 3d at 143–44.  *See* Coddi-Wes Interrogatories at 3, Dkt. 58-1 (identifying the members of Coddi-

Wes as Westlye, Weiss, and Lenny Codispot); Pl.'s Statement of Facts ¶ 171 (identifying Hohman as a "general manager and bartender at Rebellion," but not an owner of either LLC); *see also* Am. Compl. ¶ 11 (failing to allege that Hohman was an officer of either LLC). And although there is some authority for the proposition that a "legal interest in the corporate entity . . . is not a prerequisite for employer status under the FLSA," *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 152 (D.D.C. 2011), the absence of any ownership interest weighs heavily against treating Hohman as an employer, *see Ventura*, 738 F. Supp. 2d at 5–6 (considering the "ownership interest of the corporate officer"). In addition, there is considerable evidence that Hohman lacked operational control over Diaz's employment. For example, Hohman did not set Diaz's hours as a food runner, *see* Hohman's Statement of Facts ¶ 4, Dkt. 45-1, or define his food running duties, *see id.* ¶ 9. Similarly, he neither hired Diaz to clean the restaurants, *see* Pl.'s Statement of Facts ¶¶ 204–05; Pl.'s Dep. at 20:22–21:10, nor supervised his cleaning, *see* Hohman's Statement of Facts ¶ 9. Finally, he did not terminate Diaz or participate in the decision to do so. *See* Hohman's Statement of Facts ¶ 6. Therefore, Hohman was not Diaz's employer.

    4.  *Travis Weiss*

  Finally, the Court will deny summary judgment as to Weiss because there is a genuine dispute over whether he was a member of Coddi-Wes. *See* Fed. R. Civ. P. 56(a). The parties have both identified sworn testimony on this issue. Diaz points to an interrogatory from Coddi-Wes that lists Weiss as one of its members. *See* Coddi-Wes Interrogatories at 3. In response, the defendants point to Weiss' deposition, in which he testified that he was not an owner of the LLC. *See* Weiss Dep. at 19:15–20:2, 41:20–22, Dkt. 54-1. Neither party has provided the operating agreement for Coddi-Wes, or any other document that would definitively resolve the LLC's

11

membership. And whether Weiss is a member of Coddi-Wes is material for the reason discussed above: Even assuming that a legal interest in the LLC "is not a prerequisite for employer status," *Thompson*, 779 F. Supp. 2d at 152, the absence of a legal interest weighs heavily against that status, *see Ventura*, 738 F. Supp. 2d at 5–6. The Court thus denies summary judgment, on the current record, with respect to whether Weiss qualifies as an employer.[5]

## IV. CONCLUSION

Accordingly, for the reasons discussed above, it is

**ORDERED** that the defendants' joint Motion for Summary Judgment, Dkt. 47, is **DENIED**. It is further

**ORDERED** that James Hohman II's separate Motion for Summary Judgment, Dkt. 45, is **GRANTED**. It is further

**ORDERED** that the case is **DISMISSED WITH PREJUDICE** as to defendant Hohman. And it is further

**ORDERED** that the plaintiff's Motion for Partial Summary Judgment, Dkt. 52, is **GRANTED** with respect to whether Coddi-Wes I, LLC and PHMC-AVA, LLC are subject to the overtime provisions of the FLSA, as well as with respect to whether Coddi-Wes I, LLC and Brian Westlye were the plaintiff's employers, but **DENIED** with respect to whether Travis Weiss was the plaintiff's employer.

---

[5] Given this disposition, the Court will not address the degree to which Weiss exercised "operational control" over the restaurants. *Perez*, 221 F. Supp. 3d at 143–44. Similarly, the Court will not address Weiss' testimony that, although he was not a member of Coddi-Wes, he did hold equity in PHMC-AVA. *See* Weiss. Dep. at 41:20–42:13. Although that testimony could support the argument that Weiss became Diaz's employer upon obtaining that equity interest, Diaz has not advanced that argument here. The Court is open to considering that argument if it is properly developed in later proceedings.

**SO ORDERED.**

_/s/ Dabney L. Friedrich_
DABNEY L. FRIEDRICH
United States District Judge

March 31, 2022